IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **VICKI L. DARLING**           ) | |
|                                ) | |
| **Plaintiff**,                 ) | |
|                                ) | |
| v.                             ) | **CASE NO. 3:07-CV-02227-KOB** |
|                                ) | |
| **MICHAEL J. ASTRUE**,         ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,**   ) | |
|                                ) | |
| **Defendant.**                 ) | |

## MEMORANDUM OPINION

### I. Introduction

On August 10, 2005, the claimant, Vicki L. Darling, protectively filed an application for disability insurance benefits and Supplemental Security Income payments, alleging disability beginning November 1, 2002.  Upon initial consideration, the Social Security Administration denied the claims, and the claimant promptly filed a request for a hearing by an Administrative Law Judge.  The ALJ held that hearing on January 10, 2007.  On July 5, 2007, the ALJ denied disability benefits to the claimant, on the ground that she was capable of performing her past relevant work.  The Appeals Council denied review of the ALJ's decision on October 25, 2007.  The claimant has exhausted her administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3).  For the reasons stated below, this court will REVERSE and REMAND the Commissioner's decision.

### II. Issues Presented

The claimant argues that the ALJ erred in several ways: (1) the ALJ erred in relying on

the unsigned report of a state agency medical consultant; (2) the ALJ erred in concluding that Mrs. Darling's back impairment does not meet or equal a listed impairment; and (3) the ALJ erred in finding that Mrs. Darling can return to her past relevant work as a baker or bakery manager. Because the court concludes that substantial evidence does not support the ALJ's determination on the second issue, whether Mrs. Darling's back impairment meets or equals a listed impairment, the other issues need not be addressed.

### III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Brown*, 826 F.2d 996, 999 (11th Cir. 1987). However, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the

ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## V. Facts

The claimant was born in 1955 and was fifty-one years old at the time of the administrative hearing. Mrs. Darling had completed the 11th grade and had attained her GED prior to the date of the hearing. She has previous work experience as a seamstress, a cake decorator, and a bakery manager. (R. 92). According to the Mrs. Darling, she became disabled

on November 1, 2002. She was insured for benefits through June 2006. (R. 64).

Prior to November of 2002, treating doctor Richard Sawyer, M.D., saw Mrs. Darling for "a variety of aches and pains and episodic light-headedness all since an on the job injury April 26, 2001." The injury occured during the time that Mrs. Darling worked as a seamstress. (R. 159-61). Dr. Sawyer's report noted that Mrs. Darling had previously undergone treatment for carpal tunnel syndrome and that she walked with a limp. (R. 160-61). Following Dr. Sawyer's July 2001 reports, Providence Hospital records show Mrs. Darling had a lumbar spine x-ray indicating she had "moderately severe degenerative disc disease with associated degenerative change at L4-5," among other deformities. (R. 151). Days later, Dr. Sawyer once again saw Mrs. Darling and noted that she was still experiencing great pain in her right leg from the groin to the knee area; however, he also noted that her light-headedness had mostly subsided. (R. 159). At that time, Dr. Sawyer released Mrs. Darling to return to work as a seamstress or bakery assistant; but he restricted her lifting to 20 pounds and recommended that she seek further treatment with an orthopedist. (R. 159).

Mrs. Darling followed Dr. Sawyer's advice and saw an orthopedic surgeon, Raymond Fletcher, M.D. (R. 192). He continued the "light duty" restrictions and ordered that Mrs. Darling submit to additional tests and participate in physical therapy. Dr. Fletcher referred Mrs. Darling to Jeffrey Caylor, M.D., a general surgeon, after her right leg pain persisted. (R. 182).

Dr. Caylor removed a right groin mass from Mrs. Darling's leg in October of 2001. Both he and Dr. Fletcher saw Mrs. Darling post-operation for follow-up visits. Dr. Fletcher noted at his follow-up that Mrs. Darling still continued to have "chronic mechanical lumbar pain bilateral[ly]." (R. 189).

In addition to the medical records dated prior to Mrs. Darling's alleged disability onset date, medical records from after November 1, 2002 are also available. The State Agency requested Mrs. Darling undergo a consultative examination with M. Clarke Woodfin, Jr., M.D., on October 12, 2005. (R. 208-10). He conducted a musculoskeletal examination and noted problems with both Mrs. Darling's back and hands, although he also wrote that she did not act like someone with lower back pain because the examination he conducted was pain-free to her. Dr. Woodfin concluded in his summary that if Mrs. Darling "avoids frequent bending and heavy lifting she should get along fairly well." (R. 209).

Mrs. Darling also had her vision evaluated on August 5, 2005 at the request of the State Agency. (R. 197-98). The results showed her best corrected vision to be 20/40 in her right eye and 20/30 in her left for work at a distance. It also showed her to have 20/30 vision in her right eye and 20/25 in her left eye for "close work" or reading. (R. 197). The evaluation noted no types of activity that Mrs. Darling should avoid. (R. 198).

In October of 2005, R. Glenn Carmichael, M.D., acting as a State Agency medical consultant, reviewed the medical evidence available and completed an RFC assessment form. (R. 200-07). Dr. Carmichael did not conduct a physical examination of Mrs. Darling, but merely reviewed her medical records and made an assessment from them. Dr. Carmichael found that the claimant could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push and/or pull an unlimited amount, except as otherwise specified in lifting category; never balance; and should avoid all exposure to hazards such as machinery and heights, etc. He acknowledged claimant's assertions of blurred vision, back problems, carpal tunnel syndrome,

5

and limitations regarding walking, sitting, and standing. Noting that the CE exam reflected no pain, full range of motion, and normal strength, and further noting the daily functions she admitted to performing without assistance, the doctor found her statements about her limitations to be "partly credible." (R. 205). With respect to her visual limitations, Dr. Carmichael checked "none established." (R. 203).

Mrs. Darling and a vocational expert both testified at the July 20, 2007 hearing. Mrs. Darling testified that she had worked as a seamstress, a deli and bakery manager, as well as a baker. (R. 235-62). Mrs. Darling testified that since her on-the-job injury in 2001 she had not been herself. (R. 244-45). Her biggest complaint was her blurred vision. (R. 248-52). Mrs. Darling also testified that she was hesitant to see doctors because she had not had much luck with them in the past (R. 246-47).

The VE testified that Mrs. Darling had worked 11 jobs. She also testified as to the skill level of the jobs. She found a baker to be a skilled, medium job; a cake decorator to be a skilled light job; a seamstress to be a semi-skilled, light job; and a bakery manager to be a skilled, sedentary job. (R. 259). The ALJ did not ask the VE any hypothetical questions at the hearing, pending receipt of further medical evidence from Mrs. Darling's orthopedist, Dr. Johnson. The ALJ also requested opinions from Dr. Johnson and Dr. Crockett assessing Mrs. Darling's "functional capabilities and limitations." (R. 260-61).

Subsequent to the hearing, the ALJ received medical records from both Dr. Crockett and Dr. Johnson. On December 15, 2006, one month prior to her disability hearing, Mrs. Darling visited treating physician Dr. Crockett primarily for her pain complaints. (R. 222-23). Dr. Crockett noted that he had reviewed Mrs. Darling's "old medical records brought from outside."

(R. 222).  He diagnosed her with the following notable impairments: chronic mechanical low back pain/lumbar disc disease (bulging disc, L4-5 and L3-4); neuropathic pain in her lower limbs; chronic coccygodynia; and chronic insomnia/sleep disorder (associated with chronic pain syndrome).  (R. 222).  Dr. Crockett prescribed "ice or heat to back 20 minutes per hour p.r.n., no heavy lifting" and also instructed Mrs. Darling to do "[w]alking and back extension exercises as tolerated."  He prescribed her medications of Cymbalta "for chronic nerve pain (also for probable depressive symptoms)," Lyrica "for neuropathic pain," and Ultracet for pain.  (R. 222).  Dr. Crockett included in his notes that Mrs. Darling had experienced chronic cocyx pain since her fall in 2001 (R. 223).

On January 23, 2007, Dr. Johnson examined Mrs. Darling.  He noted in her history that she had fallen and incurred an on-the-job injury in April of 2001.  Dr. Johnson stated that the injury was to her lower back, right groin, and right leg and that Mrs. Darling said she was treated conservatively.  Dr. Johnson recorded that Mrs. Darling told him she had experienced constant pain since her injury.  (R. 224).  Dr. Johnson also noted that Mrs. Darling's range of motion of the lumbar spine was diminished and included measurements to support his finding in the record. (R. 224-27).  He further recorded she had weakened grip strength in her left hand, decreased sensation in her left hand fingers, and a positive straight leg-raising test on the right side at 40 degrees.  (R. 225).  Dr. Johnson conducted X-rays of the lumbar spine that showed "moderate anterior vertebral lipping throughout the lumbar spine but more severe anterior vertebral lipping at L3 and L4" as well as "severe narrowing of the L4-5 disc space to 40% of normal."  Dr. Johnson's report included his statement that in his opinion Mrs. Darling "is disabled and will be disabled for more than 12 additional months."  (R. 225).

After the hearing and the receipt of the additional documents the ALJ had requested during the hearing, the ALJ determined that Mrs. Darling had severe impairments including a history of lumbar spondylosis and visual impairment; however, he concluded that she did not have an impairment or a combination of impairments that met or equaled the listings as of July 30, 2006.  The ALJ stated that he took the subsequent doctors' reports into account when he made his decision.  The ALJ concluded that Mrs. Darling retained the RFC to perform medium work as long as she could avoid hazards in the workplace.  In Finding 6, the ALJ stated that Mrs. Darling was able to perform her past relevant work as a baker or bakery manager.  (R. 13-17).

### VI. Discussion

The claimant alleges that the ALJ erroneously disregarded the assessment of Dr. Johnson, a treating doctor, whose evaluation the ALJ requested at the disability hearing.  (R. 259 -61).  The claimant contends that the ALJ erroneously found that "the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R.14).

The ALJ stated that he considered Mrs. Darling's severe impairments under the Listings 1.04 and 2.02.  The ALJ noted that Dr. Johnson "expressed the opinion that the claimant's lumbar spondylosis would have caused disability for longer than 12 months (and prior to the date last insured)," but determined that Dr. Johnson assessed only "minimal physical restrictions."  (R. 14).  The ALJ failed to explain *why* he thought Dr. Johnson only assessed "minimal physical restrictions."  (R. 14).  The ALJ also failed to explain his statement of "no objective evidence of spinal cord compression or compromise."  (R. 14).  In making those unsupported statements, the

8

ALJ ignored the claimant's medical records.

The claimant has the burden of proving that her impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). The claimant contends that she met this burden and established that her impairment meets the requirements of § 1.04 of the Listings. Listing § 1.04 describes disorders of the spine. To meet the requirements of § 1.04(a), a claimant must have a disorder of the spine along with "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.04.

The initial criterion for evaluation under Listing § 1.04(a) is a disorder of the spine. Dr. Johnson's evaluation included MRI results supporting his diagnosis of degenerative disc disorder. Dr. Johnson also diagnosed Mrs. Darling with a herniated nucleus pulposus (documented as Schmorl's node). Both of those diagnoses are explicitly listed in § 1.04 as spinal disorders. (R. 156, 230). Dr. Johnson also documents evidence of "nerve-root irritation" by reporting that Mrs. Darling has a positive straight leg raising test on the right at 40 degrees[1], meeting the second criterion laid out in Listing § 1.04(a) requiring evidence of nerve root compression. (R. 225). He reported that the range of motion of the lumbar spine was diminished, meeting the third requirement of § 1.04(a). Dr. Johnson included objective

---

[1] A straight leg raising of 80 - 85 degrees or more is considered normal. The purpose of this test is to "detect spinal nerve-root irritation, from the pressure a herniated intervertebral disk, bone spur, tumor, post-operative scarring, etc., exerts on a nerve root." *See* David. A. Morton, M.D., *Social Security Disability Medical Tests* § 11.33.

measurements in his report including MRIs, measurements showing reflex loss, and the results of the positive straight-leg raising test. (R. 224-31). Dr. Johnson's evaluation supports a finding that Mrs. Darling's back impairment meets Listing § 1.04(a).

The law in the Eleventh Circuit is well established that the Commissioner must accord the opinions of the treating physician substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Absent a showing of *good cause* to the contrary, the commissioner cannot discount the opinions of a treating physician. *Id.*  The Eleventh Circuit has defined "good cause" in this context in at least three circumstances. First, where the opinion of the treating physician is accompanied by no objective medical evidence, is wholly conclusory, or is contradicted by the physician's own treatment notes, the ALJ may dismiss the treating physician's opinions for "good cause." *Edwards v. Sullivan*, 937 F.2d 580, 583 (1991). The second circumstance occurs when the "treating physician's opinion was not bolstered by the evidence." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (2004). The third circumstance in which an ALJ can discount the opinion of a treating physician is where evidence supports a contrary finding than that of the treating source. *Id.* at 1241; *see also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

Eleventh Circuit law also is well established that where medical evidence does not conclusively counter a treating physician's opinion, and no other good cause is presented, the Commissioner cannot discount the treating doctor's opinion. *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1986). If the ALJ decides to discredit the opinion of a treating physician, he must clearly articulate his reasons for doing so. *Phillips* 357 F.3d at 1241. Here, the ALJ did not offer any evidence to support his statement that treating physician Dr. Lloyd Johnson assessed only

"minimal physical restrictions," nor his statement of "no objective evidence of spinal cord compression." Dr. Johnson clearly documented evidence of spinal cord compression in his evaluation. (R. 224-31). The ALJ must give the testimony of a treating physician substantial or considerable weight unless he supports his contrary decision with "good cause." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Here, he failed to do so.

Although Dr. Johnson does not state in his evaluation that the claimant was disabled prior to June 30, 2006, that omission does not mean that the medical evidence within that report would not support such a determination. In determining the onset date for disabilities of a non-traumatic origin, as in the present case, the ALJ should consider the claimant's statement concerning when the disability began, her work history, and the medical and other evidence of her condition. Regarding impairments that are chronic and progressive, like degenerative disc disease, Social Security Ruling 83-20 advises that when determining the proper onset date is difficult

> [h]ow long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment [...] must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is such information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20.

The ALJ failed to provide good cause for disregarding the post-hearing medical evidence that the claimant provided. The claimant in this case has presented additional, crucial evidence, and the ALJ must take such evidence into account before arriving at his conclusion. After

reviewing the additional evidence, if the ALJ chooses to disregard it, he must state good cause for his decision to do so.

### VII. Conclusion

For the reasons stated, the court concludes that the ALJ failed to show good cause for rejecting the opinions of the claimant's treating physician. Accordingly, substantial evidence does not support his decision. Therefore, this court will reverse the Commissioner's decision and will remand it for the Commissioner to determine whether the claimant is entitled to Disability Insurance Benefits and/or Supplemental Security Income Payments.

The court will enter a separate Order consistent with this opinion.

Dated this 11th day of August, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE